IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

LEAANNE CREEKMORE,

    Plaintiff,

    v.

TRUIST BANK,

    Defendant.

Case No. 2:24-cv-209

**OPINION & ORDER**

    Before the Court are Plaintiff Leaanne Creekmore's Motion for Leave to File an Amended Complaint (ECF No. 12) and Motion to Continue the Trial and Modify the Scheduling Order (ECF No. 14). For the reasons stated herein, both motions will be **GRANTED.**

**I.    BACKGROUND**

    The plaintiff filed her original Complaint on March 28, 2024. ECF No. 1. In it, she claimed that she "engaged in activity protected by the [Family and Medical Leave Act ("FMLA")] when she took FMLA leave from January 4, 2021, through March 29, 2021," and that "Truist [] took adverse action against [her] when it placed [her] on Final Warning the day after she returned from FMLA [l]eave." *Id.* ¶¶ 47, 49. The Complaint alleges the plaintiff took FMLA leave due to "a disease that caused substantial bacterial infections in her kidneys." ECF No. 1 ¶ 14.

    The Court's Fed. R. Civ. P. 16(b) Scheduling Order set a July 10, 2024 deadline for motions to amend the pleadings under Fed. R. Civ. P. 15(a)(2). *See* ECF No. 11

§ II. Two days before that deadline, Truist provided information to plaintiff's counsel that tended to prove Truist made an internal decision to place the plaintiff on final warning status before she took FMLA leave. ECF No. 13-1 at 1–5 (letter to plaintiff's counsel); *see id.* at 6 (December 21, 2020 email approving issuance of a final warning). Truist asserted that, based on this new information, "there [was] no legal or factual basis to proceed with the case." ECF No. 13-1 at 5.

After receiving Truist's letter and accompanying documentation, counsel for the plaintiff discussed the new evidence with her and began to contemplate an alternative theory of liability. ECF No. 30 at 20:5–12; 21:25–22:4. The plaintiff requested leave to amend the Complaint on August 28—51 days after receiving the new information and 49 days after the Rule 15 deadline. ECF No. 12.

The Proposed Amended Complaint maintains the theory of liability presented in the original Complaint but also incorporates new allegations—chiefly that Truist "began scheming of ways to terminate [the plaintiff's] employment" even before she took FMLA leave. ECF No. 12-1 ¶ 20; *see* ECF No. 1 ¶ 47 (alleging the plaintiff's FMLA leave was "activity protected by the FMLA") *with* ECF No. 12-1 ¶ 62 (same); *but see id.* ¶ 61 (alleging that the plaintiff "put[ting] Truist on notice that she may have needed FMLA leave" was also "activity protected by the FMLA" that triggered "Truist's non-retaliation obligations"). The Proposed Amended Complaint explains that, before she took FMLA leave, the plaintiff had taken sick leave and vacation due to migraines, and that, in a conversation with her supervisor, the plaintiff "expressed concern that her frequent migraines were going to force her to exhaust what little

2

sick leave and vacation time she had left." ECF No. 12-1 ¶ 18. As alleged, the supervisor responded by saying the plaintiff "would need to contact HR to explore the use of FMLA leave once her sick leave and vacation time were exhausted." *Id.*

Truist filed a single brief opposing both of the plaintiff's motions. ECF No. 16. The Court held a hearing on the motions on October 30, 2024. ECF No. 30 (transcript).

## II.  LEGAL STANDARDS

### A.  Motions for Leave to Amend a Complaint

The good-cause standard applies to motions for leave to amend "after the deadlines provided by a scheduling order have passed." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 297 (4th Cir. 2008). But even if the plaintiff demonstrates good cause to amend their complaint after the deadline set forth in the scheduling order, the district court must still complete the amendment analysis under Fed. R. Civ. P. 15. *Accord Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W. Va. 1995) (describing a "two-step analysis" where, "[i]f the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under Rule 15(a)").

Fed. R. Civ. P. 15(a) provides that a party may amend a pleading by leave of the court or by written consent of the adverse party and that "[t]he court should freely give leave [to amend] when justice so requires." Leave to amend "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citation and quotation marks omitted).

"A district court should deny leave to amend on the grounds of futility only when the proposed amendment is 'clearly insufficient or frivolous on its face' or 'fails to withstand Rule 12(b)(6) scrutiny.'" *K.C. Co., Inc. v. Pella Corp.*, No. 22-2018, 2024 WL 1554759, at *3 (4th Cir. Apr. 10, 2024) (unpublished) (quoting *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021). "To survive a [Fed. R. Civ. P. 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 545. When considering a motion to dismiss, the court "must take all the factual allegations in the complaint as true," but the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

B.  **The Family and Medical Leave Act**

The FMLA provides eligible employees up to 12 weeks of unpaid leave during qualifying medical and family events and "ensures that those who take such leave will be restored to their former position or an equivalent position upon returning to work." *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 441 (4th Cir. 1999) (citing 29 U.S.C. §§ 2612(a)(1), 2614(a)(1)). The Act also makes it unlawful for an employer to "interfere with" those rights by retaliating against employees for engaging in FMLA-protected

4

activity. 29 U.S.C. § 2615(a)(1); *see* 29 C.F.R. § 825.220(c) ("employers cannot use the taking of FMLA leave as a negative factor in employment actions"). "Employers who violate the FMLA are liable to the injured employee for compensatory damages, back pay, and equitable relief." *Hukill*, 192 F.3d at 441 (*citing* 29 U.S.C. § 2617(a)(1)).

To state a retaliation claim under 29 U.S.C. § 2615, a complaint must plausibly allege that (1) the plaintiff "engaged in protected activity," (2) "the employer took adverse action against [them]," and (3) "the adverse action was causally connected to the plaintiff's protected activity." *Yashenko v. Harrah's NC Casino Co.*, LLC, 446 F.3d 541, 551 (4th Cir. 2006).

### C. Motions to Modify a Scheduling Order

A scheduling order issued pursuant to Fed. R. Civ. P. 16(b) "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). To demonstrate good cause, the party seeking modification must "show that the deadlines [in the scheduling order] cannot reasonably be met despite the party's diligence." *Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012) (unpublished per curiam opinion) (quoting 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure Civ.3d § 1522.2 (3d ed. 2010) (collecting cases)) (quotation marks omitted); *McMillan v. Cumberland Cnty. Bd. of Educ.*, 734 F. App'x 836, 846 (4th Cir. 2018) (unpublished).

In determining whether good cause exists to modify a scheduling order, district courts within the Fourth Circuit generally consider "whether the moving party acted in good faith, the length of the delay and its effects, and whether the delay will

5

prejudice the non-moving party." *G. W. Aru, LLC v. W. R. Grace & Co.-Conn.*, 344 F.R.D. 446, 449 (D. Md. 2023); *RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-cv-66, 2019 WL 1880148, at *2 (W.D. Va. Apr. 26, 2019); *Ademiluyi v. PennyMac Mortg. Inv. Trudt Holdings*, No. 1:12-cv-752, 2015 WL 575362, at *5 (D. Md. Feb. 10, 2015). Fed R. Civ. P. 16(b)(4)'s good cause inquiry "focuses on the timeliness of the amendment and the reasons for its tardy submission" with "the primary consideration [being] the diligence of the moving party." *Montgomery v. Anne Arundel Cnty., Md.*, 182 F. App'x 156, 162 (4th Cir. 2006) (unpublished).

### III. ANALYSIS

#### A. Motion for Leave to File an Amended Complaint

##### *i. Good Cause*

The Court finds that two days—the amount of time counsel had the new information before the Rule 15 date passed—was not sufficient for the plaintiff to "reasonably [meet]" the deadline to amend the Complaint. *Cook*, 484 F. App'x at 815. Additionally, the plaintiff has demonstrated that she was "diligen[t]" in running to ground the implications of the information Truist provided. *See id.*; *Montgomery*, 182 F. App'x at 162. Specifically, counsel "ask[ed] [the plaintiff] to go back into her records" to confirm Truist's accounting of the sick leave and vacation time she used prior to taking FMLA leave and to seek evidence regarding the phone conversation in which her supervisor discussed FMLA leave for the first time. *See* ECF No. 30 at 12:2–20. Counsel also conducted new research on a "potential notice theory of liability" to which Truist's letter had "tipped [him] off" and which figures in the

Proposed Amended Complaint. *Id.*; *see* ECF No. 12-1 ¶ 19, 61 (alleging the conversation about exhausting her sick leave and vacation put Truist on notice that the plaintiff would likely need FMLA leave). Given the efforts the plaintiff and her counsel undertook in response to the information Truist provided, the Court concludes "the length of the delay" in seeking to amend the Complaint was reasonable and favors granting the motion for leave to amend. See *G. W. Aru, LLC*, 344 F.R.D. at 449.[1]

Truist contends that the plaintiff was not adequately diligent for two reasons. First, Truist claims plaintiff's counsel acted too slowly in moving to amend the Complaint, because he was on notice before the July 8, 2024 letter that the theory advanced in the original Complaint might fail. *See* ECF No. 16 at 6 ¶ 7 (asserting that in the May 31, 2024 Rule 26(f) conference counsel for Truist "expressly placed [p]laintiff's counsel on notice that the decision to place [the] [p]laintiff on a Final Warning had been made before [the] [p]laintiff became ill in late December 2020"); *id.* at 2 (claiming that Truist "expressly informed [p]laintiff's counsel" during the 26(f) conference "that [p]laintiff had no valid retaliation claim" and that "litigation would be futile"); *id.* at 6 ¶ 10 (referencing a June 27, 2024 email in which Truist promised to send "evidence showing that the process and decision relating to the final warning

---

[1] The Court will address "whether the moving party acted in good faith" and "whether the delay will prejudice the non-moving party" in Parts III.a.ii. and iii., *infra*. *G. W. Aru, LLC*, 344 F.R.D. at 449. Those factors figure into the analysis under Rules 15 and 16.

at issue in this case took place prior to [the plaintiff's] request for FMLA leave, which appears to make it impossible for her to pursue her claim").

As an initial matter, that position is contrary to representations Truist made earlier: It admitted in its July 8, 2024 letter that plaintiff's counsel "did not previously possess" the information regarding the company's internal decision-making related to issuing the plaintiff a final warning. ECF No. 13-1 at 5.

Additionally, the Court does not view the timing of the internal decision to issue a final warning as inherently detrimental the plaintiff's claim. *See* Part III.A.iv, *infra* (explaining that Truist's alleged plan to issue the plaintiff a final warning strengthens her claim as to causation). Therefore, it cannot find that plaintiff's counsel was dilatory for failing to change course based solely on Truist's posturing about the effect of that information. Moreover, counsel for Truist knowingly possessed the documents related to the internal decision-making since before the May 31, 2024 Rule 26(f) conference but did not provide them to plaintiff's counsel until July 8, 2024. ECF No. 30 at 25:8–14; *see also* ECF No. 16-3 (June 27, 2024 email exchange in which counsel for Truist promised to send the documents in the next week and "apologize[d] for the delay" in proving the information").[2] So even if the plaintiff were imperfectly diligent after receiving the July 8, 2024 letter, it would be unjust to hold her to a standard her opponent did not meet.

---

[2] And Truist itself might have had the documents even before that. *See* ECF No. 30 at 18:25–19:6.

Truist also argues that the plaintiff was not diligent because she possessed the information necessary to formulate the notice theory outlined in the Proposed Amended Complaint before Truist provided evidence of its internal discussions regarding the final warning. *See* ECF No. 16 at 12 (asserting that the new allegations in the Proposed Amended Complaint "are not based on new evidence that [the plaintiff] recently learned" but rather "evidence that has been within her knowledge . . . for many years" and that the July 8, 2024 letter "merely caused her to assert a wholly different claim based on facts that presumably have been within her knowledge from the start"). The Proposed Amended Complaint *includes* an alternative theory of liability but does not *rely* on that theory for viability. *See* Part III.A.iv., *infra*. Therefore, the Court rejects the argument that the plaintiff seeks to assert a "wholly different claim." ECF No. 16 at 12. Instead, it appears that Truist's revelations about its internal decision-making primarily lent the plaintiff new support for her original claim.

This understanding is consistent with plaintiff's counsel's explanation of the plaintiff's response to the information Truist provided on July 8, 2024. At the hearing, counsel explained that, up until the point Truist provided evidence of its internal decision-making process regarding the final warning, the plaintiff "was under the impression that Truist made the decision to put her on final warning after she took FMLA leave." ECF No. 30 at 21:8–11. And as a result, the conversation during which her supervisor mentioned FMLA leave "didn't come to [the plaintiff's] mind" as

9

something that might be relevant to the lawsuit, until she learned about Truist's internal communications. *Id.* at 21:18–24.

That makes complete sense. After all, if the allegations in the Proposed Amended Complaint are true, the plaintiff had no reason to suspect, when her supervisor first mentioned FMLA leave, that she was on thin ice with Truist. *See* ECF No. 12-1 ¶¶ 26 (outlining Truist's policies, which allowed for final warnings only in circumstances where an employee "committed egregious actions that fell well beneath Truist's ethical or performance expectations" or had "previously been placed on 'Verbal' or 'Written' Warnings and failed to take corrective action), 9 (alleging the plaintiff "was an exemplary employee and adequately performed tasks expected for her"), 27 (asserting the plaintiff "had not committed any 'egregious actions' under Truist's published ethical or performance expectations" and that she "was never placed on Verbal or Written Warnings before being placed on Final Warning"). So she would have had no reason to take note at the time, when her supervisor allegedly hinted at the company's internal discussions and foreshadowed their impending retaliation. *See* ECF No. 13-1 at 6–7 (accounting of vacation and sick leave, in the context of plans for a final warning). The Court is not persuaded that the plaintiff lacked diligence merely because she did not realize Truist was counting her company-provided time off as evidence of "poor participation," ECF No. 13-1 at 6, or because she failed to recognize the import of her supervisor's statement about FMLA leave until evidence of Truist's internal discussions put that statement in context. Therefore, "[f]ocus[ing] on the timeliness of the amendment and the reasons for its

tardy submission," and especially considering the "diligence of the [plaintiff and her counsel]," the Court finds the plaintiff has established good cause to amend the Complaint. *Montgomery*, 182 F. App'x at 162.

### ii. *Prejudice*

Granting the plaintiff's motion for leave to amend the Complaint poses little risk of prejudice to Truist, and whatever prejudice exists would be cured by a contemporaneous modification of the Scheduling Order. Truist contends that it would be unfairly prejudiced if the plaintiff were permitted to amend the Complaint, because the Proposed Amended Complaint advances a theory that "relates to a different health condition at a different period of time" than the original Complaint discussed. ECF No. 30 at 35:21–24. According to Truist, the Proposed Amended Complaint's "different factual allegations" regarding what constitutes "protected activity" within the FMLA will necessitate new discovery. *Id.* at 35:23–35:24. But Truist misunderstands the plaintiff's theory. The Proposed Amended Complaint does not assert that the plaintiff took FMLA leave due to the migraines she experienced in Fall of 2020: It alleges that when she developed a kidney infection in December of 2020, she had to take FMLA leave because she had already exhausted or nearly exhausted her sick leave and vacation time due to the migraines. Truist may need *some* "new discovery into medical records that [it was] not seeking previously," but it is not as though discovery needs to entirely start anew, since the plaintiff is not claiming her migraines directly caused her to take FMLA leave. ECF No. 30 at 35:25–36:2. At most, Truist's *beliefs* about the plaintiff's migraines—*e.g.*, whether her

11

supervisors viewed the plaintiff's sick leave as legitimate and whether they believed she would run out of company-provided time off if she remained sick or suffered from a new illness—might matter more post-amendment than they did before. But counsel for Truist already has at least some evidence on that front, *see* ECF No. 13-1, and it should not be overly arduous to obtain additional information from their own client if needed.

Further, whatever prejudice might accrue to Truist would be as much its fault as the plaintiff's. The new allegations in the Proposed Amended Complaint arise out of information Truist possessed for over three years but did not reveal to the plaintiff until two days before the deadline to amend the pleadings under Rule 15.[3] *See* ECF No. 13-1 at 6–11 (emails from December 2020); ECF No. 30 at 18:25–19:6 (plaintiff's counsel asserting that he "asked over and over and over again" for the results of Truist's internal investigation but "was stonewalled and ignored each time"); *id.* at 18:25-19:2, 25:8–14 (counsel for Truist admitting that he received the December 2020 emails "before the 26(f) conference"). That tends to put the plaintiff's 49-day delay—and Truist's claims of prejudice—in perspective.

Finally, to the extent the proposed amendment would necessitate additional discovery, modifying the Scheduling Order would cure any prejudice to Truist. For these reasons, the Court finds that granting the motion for leave to amend would not prejudice Truist. *See G. W. Aru, LLC,* 344 F.R.D. at 449 (prejudice in the context of

---

[3] Counsel for Truist was not involved in the internal investigation that preceded this lawsuit. ECF No. 30 at 24:12–18.

Fed. R. Civ. P. 16(b)(4); *Laber*, 438 F.3d at 426 (prejudice in the context of Fed. R. Civ. P. 15(a)).

### *iii.* *Good Faith*

There is no evidence that either the plaintiff or her counsel acted in bad faith—or failed to act in good faith—*vis a vis* seeking to amend the Complaint.[4] Good faith in this context generally requires a party to refrain from concealing or withholding information it is obligated to share. *See Good Faith*, Black's Law Dictionary (12th ed. 2024); *cf. also United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 199 (4th Cir. 2022) (finding bad faith and denying a plaintiff leave to amend where "facts were withheld—*i.e.*, the facts [the plaintiff sought to add in the amended complaint] were known at the time of the filing of the [c]omplaint—and that no satisfactory explanation was provided").

Truist asserts that the plaintiff's "good faith is questionable" because she did not "mention that she had migraines" before seeking to amend the Complaint, and she never before alleged she had a phone call with her supervisor during which the supervisor brought up FMLA leave. ECF No. 16 at 21 (citing ECF No. 12-1 ¶¶ 44, 18). But the plaintiff did not have a "duty or obligation" to disclose this information before

---

[4] Courts in this district consider "whether the moving party acted in good faith" in seeking comply with the deadlines in a scheduling order, before finding good cause to modify such an order under Fed. R. Civ. P. 16(b)(4). *G. W. Aru, LLC*, 344 F.R.D. at 449. But the analysis under Fed. R. Civ. P. 15(a) asks whether "there has been bad faith" on the part of the party moving to amend a complaint. *Laber*, 438 F.3d at 426. Because the Court finds that the plaintiff and her counsel acted in good faith in this instance, it need not distinguish between bad faith and a lack of good faith and can collapse the two analyses in the interest of efficiency.

13

she realized it was important, *Good Faith*, Black's Law Dictionary (12th ed. 2024)—and the Court finds that once she understood it was material to her claim, the plaintiff shared it with Truist in a reasonably timely fashion.

Moreover, as the Court explained above, the plaintiff has provided a "satisfactory explanation," *Nicholson*, 42 F.4th at 199, about why she did not include these facts in her original Complaint or in response to Truist's questions at deposition. *See* Part III.A.i., *supra*; ECF No. 30 at 21:8–24. Finding no indication that the plaintiff failed to reveal all the information she knew was important to her claim at the time she was asked, the Court determines the plaintiff acted in good faith. *See G. W. Aru, LLC*, 344 F.R.D. at 449 (good faith in the context of Fed. R. Civ. P. 16(b)(4); *Laber*, 438 F.3d at 426 (bad faith in the context of Fed. R. Civ. P. 15(a)).

### iv. Futility

Amendment would not be futile because the Proposed Amended Complaint plausibly alleges that the plaintiff engaged in protected activity shortly before Truist's alleged retaliatory action—the same protected activity alleged in the original Complaint. The plaintiff seeks to add a new theory of liability based on the allegation that when she had nearly exhausted her sick leave and vacation due to migraines, Truist was put on notice that she might need FMLA leave, which triggered its nonretaliation obligations. *See* ECF No. 12-1 ¶¶ 13–18, 61. Truist objects, pointing out that the plaintiff never took FMLA leave for her migraines. ECF No. 16 at 13 (Truist arguing that the plaintiff "does not allege that she took or requested FMLA leave prior to January 2021 for migraine headaches or any other reason, and thus

14

any criticism [of the plaintiff taking too much time away from work] could not have related to taking protected leave under the FMLA"). Apparently neither party realizes that the new factual allegations in the Proposed Amended Complaint—in addition to forming the basis for the plaintiff's new legal theory—are also relevant to the causation element of the original retaliation claim. The Court need not decide at this juncture whether to allow the notice theory of liability, because a plausible claim for relief under the original, traditional theory still exists on the face of the Proposed Amended Complaint.

Like the original Complaint, the Proposed Amended Complaint alleges "protected activity" by asserting that the plaintiff "took FMLA leave from January 4, 2021 through March 29, 2021." *Yashenko*, 446 F.3d at 551; ECF No. 12-1 ¶ 34. It alleges Truist "took adverse action" against the plaintiff when it "place[d] her on Final Warning . . . the day after [she] returned from FMLA leave." *Yashenko*, 446 F.3d at 551; ECF No. 12-1 ¶ 35. And the proximity of those two events is enough to sustain the third element of the plaintiff's retaliation claim. *See Waag v. Sotera Def. Sols., Inc.*, 857 F.3d 179, 192 (4th Cir. 2017) ("[F]or purposes of establishing a *prima facie* [FMLA retaliation] case, close temporal proximity between activity protected by the statute and an adverse employment action may suffice to demonstrate causation.").

Truist makes much of the fact that it "internally decided to place [the plaintiff] on Final Warning before she formally requested FMLA leave." ECF No. 12-1 ¶ 35. Specifically, Truist asserts the plaintiff does not adequately plead that she engaged in protected activity, because (1) she did not request FMLA leave before the internal

decision was made, and (2) when she ultimately took FMLA leave, it was to recover from a kidney infection, not because of the migraines Truist knew about before they made the internal decision. *See* ECF No. 16 at 23–24. Neither argument is persuasive.

First, failure to request FMLA leave prior to Truist's internal decision is immaterial to the futility inquiry, because the operative retaliatory action was issuing the final warning, not planning to do so. In the context of the FMLA, an "adverse employment action" is one which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citations and quotations omitted). The Proposed Amended Complaint does not allege the plaintiff knew about Truist's internal decision to place her on Final Warning status, so the Court cannot infer that the decision "might have dissuaded" her—or any "reasonable worker" from bringing and FMLA claim. *Id.* Therefore, as alleged in the Proposed Amended Complaint, the decision to issue a final warning is not "adverse action" at all. *Yashenko*, 446 F.3d at 551. But the actual issuance of the final warning unquestionably is.

The plaintiff's medical problems prior to requesting FMLA leave are likewise immaterial to the question of futility. The Proposed Amended Complaint alleges the plaintiff took FMLA leave as a "consequen[ce]" of a kidney infection. ECF No. 12-1 ¶¶ 33–34. That was clearly a "serious health condition" within the meaning of the statute, and Truist does not contend otherwise. *See* 29 U.S.C. § 2611(11) (defining "serious health condition"); *see also Krenzke v. Alexandria Motor Cars, Inc.*, 289 F. App'x 629, 633–34 (4th Cir. 2008) (unpublished) (outlining the statutory and

regulatory context). The fact that the plaintiff also had migraines does not change that. It merely explains why the plaintiff needed FMLA leave to recover from her kidney infection: She had already exhausted or nearly exhausted her employer-provided vacation time and sick leave due to the migraines. *See* ECF No. 12-1 ¶ 18 (alleging the plaintiff told her supervisor she was "concern[ed] that her frequent migraines were going to force her to exhaust what little sick leave and vacation time she had left"). Truist cites no authority for the proposition that an employee loses entitlement to FMLA leave if they used their employer-provided leave for an unrelated medical reason. The Court is unaware of any such authority, and anyway that outcome would be absurd. Therefore, it does not matter if the plaintiff never "put [Truist] on notice that she intended to take leave for her migraines . . . prior to [Truist's] decision to issue a Final Warning." ECF No. 16 at 24. The Proposed Amended Complaint adequately alleges protected activity that the company did have notice of—the plaintiff's actual FMLA leave.

    Truist has worked hard to complicate this case by convincing the plaintiff that the timing of the internal decision to issue her a final warning defeats her claim. *See* ECF No. 16 at 2 (recounting how counsel for Truist told plaintiff's counsel that proving causation would be "impossible" because "the decision to place [the] [p]laintiff on a Final Warning had been made before [the] [p]laintiff [became] ill with her kidney infection"). And the plaintiff seems to have bought what Truist is selling, at least in part. *See* ECF No. 13 at 2 (asserting that evidence about the internal decision "requires [the plaintiff] to amend her Complaint"). But in reality, adding the

17

allegations about the internal decision merely strengthens the plaintiff's *original* theory, by bolstering the allegations as to "retaliatory animus." *Shipton v. Baltimore Gas & Elec. Co.*, 109 F.4th 701, 706 (4th Cir. 2024) (describing how an FMLA plaintiff may "demonstrat[e] intent by circumstantial evidence"). Simply put, the Proposed Amended Complaint plausibly asserts that when the plaintiff had nearly exhausted her sick leave and vacation time due to migraines, Truist foresaw that the plaintiff might take FMLA leave and decided to punish her if she did. Then, when the plaintiff was diagnosed with a new medical condition and actually took FMLA leave, Truist followed through on its plan with retaliatory action. Those allegations, if proven, would entitle the plaintiff to relief. Therefore, the proposed amendment is not futile. *See Davison*, 912 F.3d at 690.

The plaintiff has demonstrated "good cause" to amend the Scheduling Order and shown that "justice [] requires" amending the Complaint. Fed. R. Civ. P. 16(b)(4), 15(a). The Court finds no risk of prejudice to Truist and no bad faith on the part of the plaintiff. *See G. W. Aru, LLC*, 344 F.R.D. at 449; *Laber*, 438 F.3d at 426. It further determines that the Proposed Amended Complaint would survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Laber*, 438 F.3d at, 426. Therefore, the plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 12) will be **GRANTED.**

### B. Motion to Modify the Scheduling Order

Having found that the plaintiff demonstrates good cause to modify the Scheduling Order, the Court "consent[s]" to a modification to allow the parties to conduct whatever additional discovery filing of the Amended Complaint might

18

necessitate. Fed. R. Civ. P. 16(b)(4); *see* Part III.A.i., *supra* (finding good cause); Part III.A.iii., *supra* (discussing how modifying the scheduling order would cure any prejudice to Truist). Accordingly, the plaintiff's Motion to Continue the Trial and Modify the Scheduling Order (ECF No. 14) will be **GRANTED.**

## IV.    CONCLUSION

The plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 12) is **GRANTED.** The Clerk is **DIRECTED** to docket ECF No. 12-1 as an Amended Complaint.

The plaintiff's Motion to Continue the Trial and Modify the Scheduling Order (ECF No. 14) is likewise **GRANTED.** The original Scheduling Order (ECF No. 11) is **VACATED.** The parties are **ORDERED** to meet and confer and to contact the Court within 14 days of entry of this Opinion and Order to propose a mutually agreeable Amended Scheduling Order.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ _____
Jamar K. Walker
United States District Judge

Norfolk, Virginia
November 21, 2024

19