# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Norfolk Division

LEAANNE CREEKMORE,

    Plaintiff,

    v.

TRUIST BANK,

    Defendant.

Case No. 2:24-cv-209

## OPINION & ORDER

In this Family and Medical Leave Act ("FMLA") case, Plaintiff LeaAnne Creekmore alleges Defendant Truist Bank retaliated against her, in violation of 29 U.S.C. § 2615, after she requested and subsequently took FMLA leave. Truist moved for summary judgment. ECF Nos. 63 (motion), 64 (memorandum). The Motion will be **GRANTED IN PART** and **DENIED IN PART** because the plaintiff demonstrates genuine disputes about the reason Truist took adverse action against her and whether it violated the FMLA willfully, but the plaintiff fails to establish a genuine dispute about her ability to recover damages for denied bonuses for the years 2021–2023.[1]

---

[1] The Court has considered the arguments in the parties' briefing and concluded there is no need to hold a hearing on the Motion. *See* Fed. R. Civ. P. 78(b); E.D. Va. Civ. R. 7(J).

## I.   BACKGROUND

The following facts are undisputed:[2]

1. In 2020, the plaintiff was a Wealth Advisor I at Truist Bank. ECF No. 64 ¶ 13 (Defendant's Statement of Undisputed Facts ("DSOF")); *see* ECF No. 67 at 5 (Plaintiff's Response to Statement of Facts ("PSOF")) (not disputing this fact).

2. In the plaintiff's 2020 mid-year review, her manager, Holly McEntire, reported that the plaintiff was "[n]ot yet meeting expectations on performance behavior and results." ECF No. 64 (DSOF) ¶ 16; ECF No. 67 (PSOF) ¶ 16.

3. On December 26, 2020, Ms. McEntire submitted a Workday request for final approval of the final warning against the plaintiff, which was approved on December 29, 2020. ECF No. 64 (DSOF) ¶ 38; *see* ECF No. 67 (PSOF) at 9 (not disputing this fact).

4. Truist approved the plaintiff's request for FMLA leave from January 4, 2021 through March 28, 2021. ECF No. 64 (DSOF) ¶ 41; *see* ECF No. 67 (PSOF) at 9 (not disputing this fact).

5. The plaintiff was rated "Ineffective Impact" in her 2020 annual review—the lowest rating on the Truist performance scale. ECF No. 64 (DSOF) ¶ 44; *see* ECF No. 67 (PSOF) at 10 (not disputing this fact).

---

[2] For the sake of brevity, the Court has only included facts here that are necessary to resolve the motion on the grounds discussed below in Part III.

6. The plaintiff did not receive a fourth-quarter 2020 bonus, which would have been paid on February 26, 2021. ECF No. 64 (DSOF) ¶ 49; *see* ECF No. 67 (PSOF) at 10.

7. On March 30, 2021, after the plaintiff returned to work from FMLA leave, Ms. McEntire delivered the final warning to the plaintiff. ECF No. 64 (DSOF) ¶ 42; *see* ECF No. 67 (PSOF) at 9 (not disputing this fact).

8. On June 1, 2021, Truist notified all Wealth Advisors that they would be required to sign a Garden Leave Agreement (GLA). ECF No. 64 (DSOF) ¶ 50; *see* ECF No. 67 (PSOF) at 10 (not disputing this fact). Signing the GLA was a precondition for wealth advisors to receive bonus payment. ECF No. 64 (DSOF) ¶ 51; *see* ECF No. 67 (PSOF) at 10 (not disputing this fact). The plaintiff did not sign the Garden Leave Agreement by the extended June 25, 2021 deadline. No. 64 (DSOF) ¶ 54; *see* ECF No. 67 (PSOF) at 10 (not disputing this fact).

9. On January 1, 2023, the plaintiff was transitioned to the Premier Banker II role. ECF No. 64 (DSOF) ¶ 63; *see* ECF No. 67 (PSOF) at 12 (not disputing this fact). While in the Premier Banker II role, the plaintiff did not sign the "Premier Banking Non-Solicitation Agreement" (NSA), making her ineligible for bonus payment. ECF No. 64 (DSOF) ¶ 66; *see* ECF No. 67 (PSOF) at 12 (not disputing this fact).

## II.    LEGAL STANDARDS

### A.    Motion for Summary Judgment

A court may "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Med. Mut. Ins. Co. of N. Carolina v. Gnik*, 93 F.4th 192, 200 (4th Cir. 2024) (citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To do that, the movant must support their assertions as to undisputed facts by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

If the moving party is successful in the first instance, then the burden "shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial." *Gnik*, 93 F.4th at 200 (quotation marks omitted); *see Celotex*, 477 U.S. at 324. "The facts and all justifiable inferences arising therefrom must be viewed in the light most favorable to the non-movant." *Gnik*, 93 F.4th at 200. However, if the non-movant "fails to properly support an assertion of fact or fails to properly address another

4

party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or may "grant summary judgment if the motion and supporting materials show that the movant is entitled to it." Fed. R. Civ. P. 56(e). In deciding a motion for summary judgment, the court is not required to consider any materials in the record outside what the parties include with their briefing. Fed. R. Civ. P. 56(c)(3).

### B. FMLA Retaliation

"The FMLA prohibits employers from discriminating against an employee for exercising [their] FMLA rights." *Hannah P. v. Coats*, 916 F.3d 327, 347 (4th Cir. 2019). Courts within the Fourth Circuit apply the *McDonnell Douglas* burden-shifting framework to FMLA retaliation claims.[3] *Roberts v. Gestamp W. Virginia, LLC*, 45 F.4th 726, 738 (4th Cir. 2022); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

First, the "plaintiff must demonstrate that (1) they engaged in a protected activity; (2) their employer took an adverse employment action against them; and (3) there was a causal link between the two events." *Roberts*, 45 F.4th at 738 (cleaned up). "If the plaintiff succeeds on this front, the burden shifts to the defendant to

---

[3] The plaintiff argues that the Court should apply a "mixed-motive framework" instead of the *McDonnell Douglas* scheme. ECF No. 67 at 14–16 (citing *Fry v. Rand Constr. Corp.*, 964 F.3d 239, 244–45 (4th Cir. 2020)). As an initial matter, *Fry* itself applied the *McDonnell Douglas* standard. This Court is not permitted to extract new law from dicta in that case. More importantly, since deciding *Fry*, the Fourth Circuit clarified that courts must "apply the *McDonnell Douglas* burden-shifting framework to FMLA-retaliation claims." *Roberts v. Gestamp W. Virginia, LLC*, 45 F.4th 726, 738 (4th Cir. 2022). This Court will therefore apply *McDonnell Douglas*.

5

provide a legitimate, nonretaliatory reason for taking the employment action at issue." *Id.* (quotation marks and citation omitted). If the defendant does so, the burden shifts back to the plaintiff to demonstrate that the defendant's purported reason is merely a "pretext." *Id.*

## III. ANALYSIS

The defendant first pursues summary judgment on the plaintiff's retaliation claim generally. Additionally, the Motion seeks to eliminate certain damages from the case if the claim itself survives.[4] The Court will address each argument in turn.

### A. Retaliation Claim

#### i. *Statute of Limitations*

The FMLA has a general two-year statute of limitations. 29 U.S.C. § 2617(c)(1). However, if a plaintiff can show a "willful" violation of the FMLA, then a three-year limitation period applies. *Id.* § 2617(c)(2). The statute of limitations for an FMLA retaliation claim begins to run after "the date of the last event constituting the alleged violation for which the action is brought." § 2617(c).

The plaintiff, in her Amended Complaint, advances two theories of liability in her FMLA retaliation claim, based on two different alleged adverse actions: (1) refusing to pay the plaintiff a $100,000 bonus for her performance in the 2020

---

[4] The defendant frames the plaintiff's allegations about demotion and the loss of certain bonuses as separate "claims," which is not quite accurate. *See generally* ECF No. 64. The plaintiff brings only one claim: Count One, for retaliation in violation of 29 U.S.C. § 2615. ECF No. 32 ¶¶ 60–69. The Court construes these portions of the defendant's Motion to argue that certain damages theories are precluded as a matter of law.

calendar year and (2) placing the plaintiff on final warning status. ECF No. 32 at 9. The defendant denied the plaintiff a bonus payment for the 2020 calendar year on February 26, 2021. *See* ECF No. 64-2 at 88–89 (formulaic incentive bonuses were paid out on February 26, 2021). And the defendant issued the final warning to the plaintiff on March 30, 2021. ECF No. 64-14. The parties agreed to toll the statute of limitations by one year—from March 23, 2023 through March 23, 2024. ECF No. 32 at 20–21 (tolling agreement attached to the Amended Complaint); *see also* ECF No. 64 at 31; ECF No. 67 at 28.

The plaintiff filed this suit on March 28, 2024, exactly two years from the date the final warning was issued, accounting for the time tolled by the parties' agreement. Therefore, the retaliation claim based on the final warning is timely regardless of whether the plaintiff shows willfulness.

At the time the tolling agreement was signed, however, two years had already passed from the date the plaintiff was denied a 2020 bonus. And the tolling agreement explicitly states that the agreement "does not act to revive any claim barred by any statute of limitations or other limitations period as of March 23, 2023." ECF No. 32 at 21. Thus, in order for the plaintiff's claim to proceed based on the denial of the 2020 bonus, there must be sufficient evidence to allow a reasonable jury to find that the denial of the 2020 bonus was willful.

"The plain language of the FMLA's statute indicates Congress contemplated violations of the statute possibly encompassing multiple events." *Sparenberg v. All.*, No. 1:14-cv-1667, 2016 WL 447831, at *2 (D. Md. Feb. 4, 2016). Courts within the

Fourth Circuit have found that a single violation of the FMLA can be comprised of multiple events where those events are "inexorably linked." *Id.* Here, given that the post-hoc rationale for denial of the 2020 bonus and the final warning were given to the plaintiff upon her return from leave, a reasonable jury could find that Truist's denial of the 2020 bonus and issuance of the final warning are sufficiently linked to constitute a single violation of the FMLA. *See* ECF No. 64-14 at 1; ECF No. 64-2 at 93. And because the final warning was the "last event" constituting the alleged retaliation, a reasonable jury could find the plaintiff's claim to be timely. 29 U.S.C. § 2617(c)(1).

Even if the plaintiff had presented no evidence to show that the denial of the 2020 bonus and the issuance of the final warning are sufficiently linked to be considered one violation, a reasonable jury could find that the defendant willfully violated the FMLA. To prove a willful violation of the FMLA, the plaintiff must show that the defendant "knew or showed a reckless disregard regarding whether its conduct was prohibited." *Settle v. S.W. Rodgers Co. Inc.*, 182 F.3d 909 (4th Cir. 1999) (unpublished table decision). First, Truist has a policy that "[t]he use of qualified FMLA . . . days cannot result in the loss of any employment benefit that accrued prior to the start of a teammate's leave," and that "use of FMLA leave . . . is not considered when making employment decisions such as hiring, promotion, performance reviews, compensation, or discipline." ECF No. 64-7 at 63. Based on that policy, a reasonable jury could determine that Truist knew that retaliating against the plaintiff for taking FMLA leave is prohibited and, therefore, willfully violated the FMLA by not granting

the plaintiff a bonus for the 2020 fiscal year. The defendant denied the plaintiff a bonus payment on February 26, 2021, just under two months after the plaintiff departed for FMLA leave. ECF No. 64-2 at 89; *see* ECF No. 64 (DSOF) at 17; ECF No. 67 (PSOF) at 9 (not disputed that the plaintiff's FMLA leave began on January 4, 2021). A reasonable jury could find the temporal proximity between the plaintiff's departure for FMLA leave and the denial of the 2020 bonus to be sufficient evidence that denial of the bonus was willful retaliation. Accordingly, the three-year statute of limitations may apply, and the Court declines to preclude the theory of liability as to the 2020 bonus denial at this stage.

### ii. *Retaliation Claim in General*

A reasonable jury could find that the plaintiff engaged in protected activity when she took FMLA leave from January 4, 2021 through March 28, 2021. ECF No. 64-7 ¶ 30; *see* ECF No. 64 (DSOF) ¶ 41; ECF No. 67 (PSOF) at 9–10 (not disputing this fact); *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006) (recognizing that taking FMLA leave is a protected activity).[5]

---

[5] Earlier in this case, the Court observed that "Truist has worked hard to complicate this case by convincing the plaintiff that the timing of the internal decision to issue her a final warning defeats her claim. . . . And the plaintiff seems to have bought what Truist is selling, at least in part." ECF No. 31 at 17. That appears to still be the case. As before, the Court sees a more direct path to deciding the issues in the Motion.

Truist issued the plaintiff a final warning when she returned from FMLA leave, but it alleges it *decided* to issue the warning *before* the plaintiff took that time off. ECF No. 64 at 16–17. Truist argues that no protected activity occurred here because at the time it decided to issue the final warning, it had insufficient notice that the plaintiff intended to take FMLA leave. *Id.* at 22–24. But Truist does not get to dictate what counts as retaliation and when it occurred, in order to secure summary judgment. The mere decision to issue a final warning—while the warning itself remained

9

Likewise, a reasonable jury could find that the defendant took an adverse employment action against the plaintiff. "An adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." *Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 704 (4th Cir. 2023) (quotation marks and citation omitted). After she returned from FMLA leave, the plaintiff was issued a "final warning." ECF No. 64-14. This status disqualified the plaintiff from applying for any new position for 90 days and enabled Truist to terminate the plaintiff's employment if she "d[id] not meet the performance expectations specified in this Final Warning." *Id.* at 6.

Additionally, in a performance review for the year preceding her FMLA leave, she received a ranking of "ineffective impact," which indicated she was not meeting expectations. ECF No. 64-16 (review); ECF No. 64-2 at 93. That ranking made the plaintiff ineligible for a 2020 bonus. ECF No. 64-15 ¶ 7.[6] And the plaintiff did not receive a raise for the year preceding her FMLA leave, even though she had always

---

unexecuted—was not an "adverse employment action," because it did not "adversely affect[] the terms, conditions, or benefits of the plaintiff's employment." *Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 704 (4th Cir. 2023) (quotation marks and citation omitted). Therefore, whether or not the plaintiff gave adequate notice before that decision was made does not alter the Court's analysis. At most, evidence that Truist might have suspected the plaintiff would take FMLA leave and planned to sanction her if she did is probative of retaliatory intent attached to the eventual *issuance* of the final warning, after the plaintiff returned to work.

Nothing in this Opinion and Order should be taken to prohibit Truist from offering evidence at trial about when it decided to issue the plaintiff a final warning.

[6] That Truist delivered the 2020 performance review—rationalizing the denial of the bonus—to the plaintiff after the bonus was denied in February does not mean that the rationale was not equally applicable at the time of denial.

10

received an annual raise before. ECF No. 64-3 at 18. A reasonable jury could find those decisions by Truist to have "adversely affect[ed] the . . . benefits of the plaintiff's employment." *Giles*, 59 F.4th at 704.

Finally, there is a genuine dispute as to whether the adverse actions described above were causally linked to the plaintiff taking FMLA leave. "[F]or purposes of establishing a prima facie case, close temporal proximity between activity protected by the statute and an adverse employment action may suffice to demonstrate causation." *Waag v. Sotera Def. Sols., Inc.*, 857 F.3d 179, 192 (4th Cir. 2017); *see Yashenko*, 446 F.3d at 551 ("While evidence as to the closeness in time far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality.") (quotation marks and citations omitted). Here, the defendant delivered the final warning and the negative performance review when the plaintiff returned from leave. *See* ECF No. 64-14 at 1; ECF No. 64-2 at 93. Based on this tight temporal proximity, a reasonable jury could find a causal link between the plaintiff taking FMLA leave and the defendant issuing the negative performance review that disqualified the plaintiff from receiving a bonus.

The defendant proffers evidence that it took adverse actions against the plaintiff because she was underperforming at work, not because she took FMLA leave. For example, the manager who authorized issuance of a final warning to the plaintiff asserts that her "conclusion that [the plaintiff] should receive a [f]inal [w]arning did not at all consider [the plaintiff's] alleged medical condition or any other

11

basis apart from [those] documented issues." ECF No. 64-7 ¶ 14. Instead, the manager attests the plaintiff faced disciplinary action because she (1) used "a personal email address and personal devices for communicating confidential information about Truist clients;" (2) did not "full[y] participat[e] in her job duties" for a period of time; (3) "fail[ed] to accurately record time off;" (4) "fail[ed] to maintain consistency in calling activities, computer utilization, and documentation; and (5) "fail[ed] to maintain an accurate pipeline report." *Id.* ¶ 9. Additionally, the plaintiff's manager justified the plaintiff's "ineffective impact" rating—rendering the plaintiff ineligible for a 2020 bonus—by reporting that the plaintiff's "[p]erformance fell short of expectations in both effective activities and results achieved." ECF No. 64-16 at 1.

In response, the plaintiff presents sufficient evidence to create a genuine dispute as to whether the defendant's proffered reasons for disciplining the plaintiff were mere pretexts. "In evaluating employer intent and the question of pretext, the district court may consider among other things, the historical background of the . . . decision; [t]he specific sequence of events leading up to the challenged decision; [d]epartures from the normal procedural sequence; and . . . [any] contemporary statements by members of the decisionmaking body." *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 205 (4th Cir. 2016) (citing *Reno v. Bossier Parish Sch. Bd.*, 520 U.S. 471, 489 (1997)) (quotation marks omitted); *see also Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267–68 (1977) (discussing factors that might indicate discriminatory intent).

12

Here, the plaintiff provides evidence that a reasonable jury could rely upon to conclude that Truist's proffered innocent reasons for its adverse actions were pretexts for discrimination. First, the plaintiff supplies evidence that though her performance in 2019 fell "well beneath [her] track record from previous years," the defendant took no disciplinary action against her that year, ECF No. 67-3 ¶ 19—it was only after she took FMLA leave that she received a final warning and was denied a bonus, claiming the decisions were based on job performance. On this basis, a reasonable jury could conclude the plaintiff's job performance was not the real reason she suffered adverse employment actions.

Alternatively, a reasonable jury could decide the proffered explanations are pretextual because the plaintiff was simply performing her job adequately. The plaintiff's mid-year 2020 performance check-in report—apparently the last formal review she received before she took FMLA leave—provides mixed feedback about her performance. *See* ECF No. 64-4. In the report, the plaintiff's manager described the plaintiff as "making progress" and "tracking ahead of plan in investments" *Id.* at 1. While the performance check-in also included indications that the plaintiff's job performance was less than stellar, there is enough non-negative information in the report for a reasonable jury to find that the plaintiff was performing her duties at least well enough to avoid the kind of disciplinary action she suffered after she returned from FMLA leave.

On these alternative bases, a reasonable jury could conclude that the "historical background" of the defendant's decision to issue the plaintiff a final

13

warning reveals that her job performance was not the real reason for the disciplinary action. *Sharif*, 841 F.3d at 205.

Ultimately, the Court finds that the plaintiff has created genuine issues of material fact on each element of her retaliation claim. Therefore, summary judgment on the entire claim is not warranted.

**B. Damages Theories**

***i. 2021–2023 Bonuses***

The plaintiff cannot recover 2021–2023 bonuses because her failure to sign the GLA and the NSA made her ineligible for such incentive pay.

Whereas the Amended Complaint explicitly pleads that the defendant took adverse action against her by denying her a 2020 bonus and placing her on final warning status, the Amended Complaint does not plead an adverse action in the form of not paying the plaintiff a bonus for the years 2021–2023. *See* ECF No. 32 at 9–10. The Amended Complaint does, however, plead that the plaintiff's "placement on [f]inal [w]arning had devastating effects on her career and *earning prospects* within Truist beyond the twelve-month period the [f]inal [w]arning was in effect." *Id.* at 7 (emphasis added). Therefore, the Court finds that the Amended Complaint adequately pleads a damages theory for the denied 2021–2023 bonuses.

Nevertheless, the plaintiff will not be able to recover the 2021–2023 bonuses because there is no genuine dispute that she failed to satisfy the eligibility conditions to receive those bonuses. Signing the GLA is a condition precedent to eligibility for bonus payment. ECF No. 64-17 at 14 ("I understand and agree that my execution of,

14

and full compliance with, this Agreement is a condition precedent and a condition subsequent to my right to participate in the incentive compensation plan applicable to my position."), 54 (GLA frequently asked questions document stating that "[s]igning the agreement provides for continued eligibility to participate in applicable incentive plans"); *see* ECF No. 64-2 at 97 ("teammates who did not sign the [GLA] would be ineligible for bonus incentive pay as of July 1, 2021"). It is undisputed that the plaintiff did not sign the Garden Leave Agreement in 2021. ECF No. 64 (DSOF) ¶ 54; *see* ECF No. 67 (PSOF) at 10 (not disputing this fact).

Further, signing the NSA is a condition precedent to receive bonus incentives as a Premier Banker, which it is undisputed the plaintiff became in 2023. ECF No. 64-20 at 1 (conditioning participation in the bonus incentive compensation plan upon signature of the NSA). The plaintiff did not sign the NSA. ECF No. 64-3 at 47. Therefore, no reasonable jury could find that the plaintiff was eligible for bonus incentive pay during 2021–2023. Because the plaintiff has failed to put on sufficient evidence to create a jury question as to whether she signed the GLA and NSA and, thus, whether she was eligible for bonuses in 2021–2023, summary judgment will be **GRANTED** as to damages for bonuses from the years 2021–2023.[7]

---

[7] The plaintiff argues that because the plaintiff's final warning status already disqualified her from incentive pay, the plaintiff's failure to sign the GLA does not bar her from claiming damages from unpaid 2021-2023 bonuses. ECF No. 67 at 29–30. But, while it is true that the plaintiff was ineligible to receive a bonus while her final warning was in effect through March 30, 2021, *see* ECF No. 64-14, even if the plaintiff were allowed to receive a bonus during that time, she would nevertheless be ineligible to receive bonuses from 2021–2023 due to her failure to sign the GLA. Therefore, the plaintiff's argument does not change the Court's analysis.

15

### *ii.   Demotion*

The plaintiff also seeks to recover damages as a result of her demotion[8] from Wealth Advisor I to Premier Banker II. Truist claims that damages related to the plaintiff's demotion are consequential damages and therefore not permitted. ECF No. 64 at 34. "Consequential damages are generally defined as '[s]uch damage, loss or injury as does not flow directly and immediately from the act of the party, but only from some of the consequences or results of such act.'" *Trimed, Inc. v. Sherwood Med. Co.*, 977 F.2d 885, 893 n. 7 (4th Cir. 1992) (quoting Black's Law Dictionary 390 (6th ed. 1990)). The plaintiff does not contend that damages regarding her 2023 demotion are direct and immediate results of Truist's adverse employment action. Rather, the plaintiff alleges that a "cascading effect[]" of the final warning was that "[the plaintiff's] performance record took a substantial blow and contributed to the defendant's decision to demote her to a Premier Banker." ECF No. 32 ¶ 53. Therefore, the damages the plaintiff seeks because of her demotion are consequential damages.

The defendant contends, based on a nonbinding decision in the Fourth Circuit, that consequential damages are not allowed in FMLA cases. ECF No. 64 at 34; *see Montgomery v. Maryland*, 72 F. App'x 17, 19 (4th Cir. 2003) (unpublished) (holding nominal and consequential damages unavailable under the FMLA). But the Supreme Court has made clear that "violators [of the FMLA] *are* subject to consequential

---

[8] Truist disputes whether the change in the plaintiff's role constitutes a demotion. That is a jury question. Because a reasonable jury could conclude a move from a position designated "I" to a position designated "II" is a step down, the Court assumes for the purpose of this analysis that the plaintiff was demoted.

16

damages and appropriate equitable relief." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 87 (2002) (emphasis added); *see Hannah P. v. Haines*, 80 F.4th 236, 258 n.8 (4th Cir. 2023) (Gregory, J., dissenting) (recognizing the conflict between *Montgomery* and *Ragsdale*).

Assuming without deciding that "proximate-cause rules might bar recovery" of consequential damages, Truist does not do enough to demonstrate that proximate cause bars damages based on the plaintiff's demotion. *Hannah P.*, 80 F.4th at 258 n.8; *see* 29 U.S.C. § 2617(a)(1) (an employer is liable for damages equal to the amount of "any wages, salary, employment benefits, or other compensation denied or lost to such employee *by reason of* the violation" (emphasis added)); *Breeden v. Novartis Pharms. Corp.*, 714 F. Supp. 2d 33, 36 (D.D.C. 2010), *aff'd*, 646 F.3d 43 (D.C. Cir. 2011) (explaining the "number of reasons strongly suggest that the FMLA's 'by reason of' standard incorporates a proximate cause requirement"). Here, the initial burden is on the defendant to demonstrate "the absence of a genuine dispute" about proximate causation, by citing to "particular parts of materials in the record" and showing that the plaintiff "cannot produce admissible evidence to support" the requisite facts. *Gnik*, 93 F.4th at 200; Fed. R. Civ. P. 56(c)(1). But the only citations the defendant provides in support of its position on proximate causation are to the Amended Complaint, where the plaintiff alleges the defendant's retaliation had "cascading effects" on her career, including her placement in a role she viewed as a demotion. ECF No. 64 at 9. That is not enough to clear the initial hurdle, so the plaintiff was not required to respond with evidence of proximate causation.

17

Consequential damages are recoverable under the FMLA, and the defendant fails to meet its initial burden to show there is no jury question as to whether the alleged retaliation caused the plaintiff's demotion. Therefore, the Motion will be **DENIED** as to damages related to the alleged demotion.

## IV. CONCLUSION

Defendant Truist Bank's Motion for Summary Judgment (ECF No. 63) is **GRANTED IN PART** and **DENIED IN PART**.

The plaintiff's FMLA retaliation claim survives, and she may pursue damages related to her alleged demotion. But she will not be permitted to recover damages for denied bonuses from the years 2021–2023.

**IT IS SO ORDERED.**

/s/
Jamar K. Walker
United States District Judge

Norfolk, Virginia
June 24, 2025